# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

TEMIKA RHNEE DESHAWN SIMON,

                    Plaintiff,

vs.                                           Case No. 3:15-cv-1424-J-JRK

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

                    Defendant.

_____/

## OPINION AND ORDER[2]

### I.  Status

      Temika Rhnee Deshawn Simon ("Plaintiff") is appealing the Commissioner of the

Social Security Administration's final decision denying her claim for disability insurance

benefits ("DIB").   Plaintiff's alleged inability to work is a result of "[post ]t[raumatic]

s[tress ]d[isorder]" ("PTSD"), "depression," "arthritis," "asthma," "hip pain," and "anxiety."

Transcript of Administrative Proceedings (Doc. Nos. 11, 17; collectively, "Tr." or

"administrative transcript"), filed February 11, 2016 and March 17, 2016,[3] at 86-87, 100, 363;

---

[1]     Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017.  Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed February 11, 2016; Reference Order (Doc. No. 14), entered February 16, 2016.

[3]     The administrative transcript was filed as two separate documents on the Court's electronic filing system.  See Doc. Nos. 11, 17.  The latter document contains transcripts of hearings that "were not available when the administrative record . . . was [originally] certified on January 6, 2016."  Supplemental Certification (Doc. No. 17 at p.1).  The pagination of the administrative transcript is continuous from one document to the next; accordingly, the pages are cited as "Tr. at [relevant page
(continued...)

<u>see also</u> Tr. at 449, 459.  On June 20, 2013, Plaintiff filed an application for DIB, alleging an onset disability date of January 1, 2009.  Tr. at 329-31.  Plaintiff's application was denied initially, <u>see</u> Tr. at 86-98, 99, 116-20, and was denied upon reconsideration, <u>see</u> Tr. at 100-12, 113, 121-24.

On August 14, 2014, an Administrative Law Judge ("ALJ") held a first hearing, during which the ALJ heard testimony from Plaintiff, who was represented by counsel; and Nina Tocci, Ph.D., M.S., a medical expert ("First ME" or "Dr. Tocci").  Tr. at 806-54; <u>see</u> Tr. at 193-98 (Dr. Tocci's curriculum vitae ("C.V.")).  Then, on November 18, 2014, the ALJ held a second hearing, during which the ALJ heard testimony from Plaintiff (who remained represented by counsel) and Glenn A. E. Griffin, Ph.D., a medical expert ("Second ME" or "Dr. Griffin").  Tr. at 855-910; <u>see</u> Tr. at 244-51 (Dr. Griffin's C.V.).  On March 11, 2015, the ALJ held a third hearing, during which the ALJ heard testimony from Plaintiff (who remained represented by counsel); Charles Kimball Heartsill, a vocational expert ("VE"); and Rick Adams, Ph.D., a medical expert ("Third ME" or "Dr. Adams").  Tr. at 37-85; <u>see</u> Tr. at 272-76 (Mr. Heartsill's C.V.), 304-07 (Dr. Adams's C.V.).

The ALJ issued a Decision on May 12, 2015, finding Plaintiff not disabled through the date of the Decision.  Tr. at 19-30.  After the ALJ's Decision was issued, the Appeals Council received from Plaintiff, and incorporated into the administrative transcript, some additional evidence in the form of a brief (with attached exhibits) authored by Plaintiff's counsel.  Tr. at 4-5; <u>see</u> Tr. at 464-87 (brief and attached exhibits).  On October 6, 2015, the Appeals

---

[3](...continued)
number]" no matter which document contains the cited page.

Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner.  On November 30, 2015, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff makes one primary argument on appeal: that "[t]he ALJ's discussion of the medical evidence is confusing and contradictory, and goal-directed toward denying benefits." Plaintiff's Memorandum—Social Security (Doc. No. 19; "Pl.'s Mem."), filed April 18, 2016, at 14 (emphasis omitted).  In support of this argument, Plaintiff focuses on the evidence related to Plaintiff's mental disorders, and she contends the ALJ erred with respect to his evaluation of such evidence.  See id. at 14-25.  Specifically, Plaintiff addresses the opinions of all three ME's who testified at the hearings, the opinions of two consultative examiners (those of Bradford I. Brunson, Ph.D., ADMPP and Peter Knox, M.Ed., Psy.D., respectively), and a seventy (70) percent disability rating assigned by the Department of Veteran's Affairs ("VA"). Id.  On June 17, 2016, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 20; "Def.'s Mem.") addressing the argument raised by Plaintiff.  Then, with leave of Court (Doc. No. 22), Plaintiff on July 19, 2016 filed Plaintiff's Reply Brief—Social Security (Doc. No. 25).

As summarized above, the ALJ in this matter held three hearings and engaged one consultative examiner and three ME's (one ME for each hearing) in an attempt to determine the severity of Plaintiff's mental disorders and their effect on her ability to perform work.  In addition, prior to the first hearing, Plaintiff was examined by a different consultative examiner than the ALJ eventually engaged.  The first consultative examiner, Dr. Brunson, did not opine

regarding any work-related functions. Tr. at 511-17.[4] During the first hearing, the First ME was unable to testify regarding the effect of the mental disorders on Plaintiff's ability to perform work because the VA records in the file at the time of the first hearing were confusing and incomplete; however, the First ME did opine about Plaintiff's diagnoses and some of her symptoms. Tr. at 820-21, 846-47. After the first hearing, Plaintiff was sent to Dr. Knox, the second consultative examiner, who rendered an opinion that included work-related functions. Tr. at 612-30.[5]

During the second hearing, the Second ME testified, based on the evidence available at that time (which still did not include up-to-date VA medical records and did not include the First ME's testimony), that Plaintiff medically equals Listing 12.06 of the listings set forth in 20 CFR Part 404, Subpart P, Appendix 1.[6] Tr. at 863. The ALJ disagreed based on the limited evidence of treatment for mental disorders in the file, and he elected to continue the hearing one more time to have the updated VA medical records submitted and evidently to obtain the services of a Third ME. Tr. at 863-67, 898-908.

The Third ME testified during the third hearing. Tr. at 40-51. Although the updated VA medical records had been submitted just prior to the hearing, they were not available for the Third ME's review. Tr. at 44-46. Nor does it appear that the Third ME was provided with the testimony of the First ME and the Second ME. See Tr. at 40 (exhibits received); see Tr. at 40-51 (Third ME's testimony). The Third ME nevertheless testified that Plaintiff does not

---

[4] The ALJ gave "[s]ignificant weight" to Dr. Brunson's opinion. Tr. at 26.

[5] The ALJ gave "some appropriate weight" to Dr. Knox's opinion. Tr. at 27.

[6] Listing 12.06 addresses anxiety-related disorders.

meet or medically equal any listing, and he further testified regarding work-related functions. Tr. at 47-50.  The ALJ accepted the Third ME's opinion and testimony, finding (as discussed in more detail below) that Plaintiff is capable of performing light work with additional restrictions.  Tr. at 22-24.

After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the ALJ erred in evaluating the opinion evidence (with the exception of Dr. Brunson's opinion) and VA disability rating, so the Commissioner's final decision is due to be reversed and remanded for further proceedings.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[7] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

---

[7]      "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 21-30.  At step one,

the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since August

1, 2012, the alleged onset date."  Tr. at 21 (emphasis and citation omitted).  At step two, the

ALJ found that Plaintiff "has the following severe impairments: a history of PTSD; history of

dysthymia vs. a depressive disorder NOS vs. a major depressive disorder; history of

substance abuse (marijuana)[;] and a history of lumbar spine degenerative disc disease (mild

to moderate)."  Tr. at 21 (emphasis and citation omitted).  At step three, the ALJ ascertained

that "[Plaintiff] does not have an impairment or combination of impairments that meets or

medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart

P, Appendix 1."  Tr. at 22 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity

("RFC"):

> [Plaintiff can] perform a reduced range of light work as defined in 20 CFR [§]
> 404.1567(b). [Plaintiff] can sit, stand and walk for at least six hours each in an
> eight hour workday, lift/carry 20 pounds occasionally (up to 1/3 of the workday)
> and lift/carry 10 pounds or less on a more frequent basis (up to 2/3 of the
> workday).  Within the established weight limitations, [Plaintiff] can push, pull
> and operate hand, arm and foot/pedal controls occasionally.   She can
> occasionally climb ramps and stairs but never climb ropes, ladders or
> scaffolding. [Plaintiff] can balance, stoop, kneel, crouch, and crawl all on an
> occasional basis.  In regard to her ability to use her upper extremities within the
> established weight limits, [Plaintiff] can reach in all directions, handle, finger and
> feel without limitation. [Plaintiff] has no limitation in regards to her abilities to
> see, speak or hear. [Plaintiff] cannot tolerate exposure to unprotected heights
> or dangerous moving machinery.  She requires a temperate controlled work
> environment without exposure to concentrated amounts of atmospheric
> pollutants or exposure to concentrated industrial vibration. Mentally, [Plaintiff]
> can perform simple, rote and repetitive tasks in a work environment that does
> not change from one day to the next.   Interaction with others, including
> members of the general public, co-workers and supervisors, can be no more
> than occasional. [Plaintiff] cannot perform production/assembly line or pay by

> the piece type of work which would require her to meet any strict production
> goals or quotas.

Tr. at 24 (emphasis omitted).  At step four, the ALJ found that Plaintiff "is unable to perform

any of her past relevant work" as a "stock clerk," a "ticket agent," and an "order clerk."  Tr.

at 28 (some emphasis and citation omitted).  At step five, the ALJ considered Plaintiff's age

("30 years old . . . on the alleged disability onset date"), education ("a least a high school

education and is able to communicate in English"), work experience, and RFC, and relied

on the testimony of the VE to find Plaintiff is capable of performing work that exists in

significant numbers in the national economy.  Tr. at 29-30 (some emphasis omitted).

Namely, the ALJ identified representative jobs as "Route Clerk," "Collator Operator," "Call

Out Operator," "Loader Semiconductor Dies," "Table Worker," and "Blade Balancer."  Tr. at

29-30.  The ALJ concluded that Plaintiff "has not been under a disability . . . from August 1,

2012, through the date of th[e D]ecision."  Tr. at 30 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42

U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions

of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ."

Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320,

1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but

less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting

Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard

is met when there is "'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales,

402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); <u>see also</u> <u>McRoberts v. Bowen</u>, 841 F.2d 1077, 1080 (11th Cir. 1988); <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings.  <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

The undersigned first discusses the general law with respect to opinion evidence and VA disability ratings.  Then, the various opinions at issue are addressed in chronological order, followed by the VA's disability rating.

### A.  General Law

The Regulations establish a "hierarchy" among medical opinions[8] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists."  <u>McNamee v. Soc. Sec. Admin.</u>, 164 F. App'x

_____

[8]     "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); <u>see also</u> 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).  The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."   20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(e).

With regard to a treating physician or psychiatrist,[9] the Regulations instruct ALJs how to properly weigh such a medical opinion.  See 20 C.F.R. § 404.1527(c).  Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  Id.  When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician).  Id.

---

[9]      A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition.  See 20 C.F.R. § 404.1502.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted).  Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence.  Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)).  However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive").  While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20

C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'"  Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

With respect to a VA disability rating, "'Although the V.A.'s disability rating is not binding on the [Commissioner of the Social Security Administration], it is evidence that should be given great weight.'"  Brady v. Heckler, 724 F.2d 914, 921 (11th Cir. 1984) (quoting Olson v. Schweiker, 663 F.2d 593, 597 n.4 (5th Cir. 1981));[10] see also 20 C.F.R. § 404.1504.

## B.  Dr. Brunson (Consultative Examiner)

Dr. Brunson examined Plaintiff on January 29, 2013 at the request of Disability Determination Services and submitted a detailed report dated January 31, 2013. Tr. at 511-17.  The report does not provide many specific functional limitations but does provide history; observations; emotional status; education; health status; current status; diagonses; as well as opinions on prognosis; capability; and activities of daily living. Tr. at 511-17.  Of particular note with respect to Plaintiff's mental disorders, Dr. Brunson diagnosed PTSD; generalized

_____

[10]      In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former United States Court of Appeals for the Fifth Circuit that were rendered prior to the close of business on September 30, 1981.

anxiety disorder; major depressive disorder, recurrent - severe; and pain disorder associated with both psychological factors and a general medical condition, chronic.  Tr. at 516.  The ALJ summarized Dr. Brunson's report in the Decision and assigned it "[s]ignificant weight." Tr. at 26.

Plaintiff contends the ALJ erred because, despite assigning the opinion significant weight, the ALJ essentially rejected portions of it.  Pl.'s Mem. at 17-18.  As grounds for this argument, Plaintiff states that Dr. Brunson assigned a Global Assessment of Functioning score of fifty (50) which is suggestive of greater limitations than assigned by the ALJ, and Dr. Brunson's report was relied upon by the Second ME, Dr. Griffin, in testifying that Plaintiff equals Listing 12.06 (that addresses anxiety-related disorders).  Id.  Essentially, Plaintiff submits that if Dr. Griffin relied on Dr. Brunson's report to opine that Plaintiff medically equals Listing 12.06, the ALJ could not have really given Dr. Brunson's opinion significant weight because the ALJ ultimately found that Plaintiff does not meet or medically equal a listing. See id.

The evidence to which Plaintiff points in arguing the ALJ erred with respect to Dr. Brunson's opinion is not particularly persuasive.  There are no readily apparent discrepancies between Dr. Brunson's report and the ALJ's ultimate findings such that it can be said that the ALJ effectively rejected or assigned less than significant weight to Dr. Brunson's opinion.  Compare Tr. at 511-17 (report), with Tr. at 21-30 (findings in Decision). And, although the Second ME, Dr. Griffin, relied in part on Dr. Brunson's report, see Tr. at 861, there was quite a bit of other evidence upon which Dr. Griffin's testimony at the second

hearing was based, see Tr. at 860-64.  Accordingly, the undersigned finds that the ALJ did

not err with respect to Dr. Brunson's opinion.

## C.  Dr. Tocci (First ME)

Plaintiff asserts the ALJ erred in failing to indicate the weight assigned to the opinion

of the First ME, Dr. Tocci, that was given during the first hearing before the ALJ.  See Pl.'s

Mem. at 18-20.  Plaintiff, however, concedes that "[Dr.] Tocci did not provide an opinion with

respect to the medical listings and did not provide testimony regarding mental functioning

limitations."  Id. at 19.  Defendant does not directly address the ALJ's failure to assign weight

to Dr. Tocci's opinion, but notes that "Dr. Tocci testified that Plaintiff's mental status exams

were not reflective of psychotic symptoms and the VA medical records were misleading in

every way."  Def.'s Mem. at 10 (citing Tr. at 810-21).

Although Dr. Tocci's testimony was of marginal value to the ALJ in determining

Plaintiff's functional limitations, Dr. Tocci did testify regarding her interpretation of the treating

medical records from the VA that were available at the time and regarding the effects of

Plaintiff's disorders:

> Honestly, Your Honor, this record is misleading in every which way.  But
> the homelessness, the medication [including Risperdal and Zoloft], whether or
> not they're prescribing it for what they wrote down, there is indication that she
> was having intrusive thoughts in both the VA record and 5F which is the out-
> patient VA record.  Controlled on Risperdal.  So voices controlled on Risperdal.
> Again, the depressive symptoms improving.
>
> The VA record suggests that she does have these things and the
> medication is appropriate.  They're not just expounding on it for whatever
> reason.  They're not talking about, it's a very cryptic system with their notes
> provided.
>
> So I can only look[] at what they're saying and sort of read between the
> lines of what they're not saying, if that makes any sense at all, Your Honor.

Tr. at 820-21.

After Dr. Tocci's above testimony, the ALJ questioned Plaintiff regarding her impairments, treatment, and medications.   Tr. at 821-44.   The ALJ then made the observation that the record was incomplete because Plaintiff had moved to Jacksonville from San Antonio, Texas in late 2013, and there was no updated VA medical evidence in the file after the date of the move.   Tr. at 844-45 (ALJ's observation), 839-40 (Plaintiff testifying about the date of her move).   The ALJ and Dr. Tocci also observed that the VE records are confusing as to whether Plaintiff's final diagnosis was major depressive disorder or dysthymia (among her other diagnoses).   Tr. at 846-47.   So, the ALJ made the decision to continue the hearing to allow for the updated medical evidence to be submitted and so that Plaintiff could be sent for another consultative examination.   Tr. at 844-54.

The ALJ in the written Decision recognized that Dr. Tocci testified during the first hearing, Tr. at 19, 23,[11] but other than that recognition, did not substantively address Dr. Tocci's testimony or assign it any weight, see Tr. at 19-30.   As explained above, Dr. Tocci testified that she was able to glean from the VA records that Plaintiff hears voices (that are controlled with Risperdal) and that Plaintiff has depressive symptoms that are improving. Tr. at 820-21.   Yet, the ALJ in the Decision "did not find [Plaintiff's] complaints of hearing voices to be credible."   Tr. at 27.   Thus, the ALJ's finding in this regard appears to be inconsistent with Dr. Tocci's testimony.   Without a specific discussion of Dr. Tocci's testimony, the undersigned cannot determine whether the ALJ properly considered it.   See,

---

[11]     On page 23 of the administrative transcript (page 5 of the Decision), the ALJ does not refer to Dr. Tocci by name, instead (when discussing Dr. Griffin's testimony) referring to "two other testifying psychological experts," Tr. at 23, i.e., Dr. Tocci and Dr. Adams.

e.g., 20 C.F.R. § 404.1527; Martinez v. Acting Comm'r of Soc. Sec., 660 F. App'x 787, 793-94 (11th Cir. 2016) (citation omitted) (observing that an "ALJ did not state the weight assigned" to a treating physician's opinion and finding that "th[e] Court thus cannot determine whether the ALJ's decision was supported by substantial evidence"). Accordingly, for this and other reasons discussed below, remand is required.

**D. Dr. Knox (Consultative Examiner)**

Plaintiff argues the ALJ erred in assigning "some appropriate weight" to the opinion of Dr. Knox, the consultative examiner to whom Plaintiff was sent after the first hearing. Pl.'s Mem. at 20; see Tr. at 27.  According to Plaintiff, the phrase is "vague and incapable of meaningful judicial review."  Pl.'s Mem. at 20 (citations omitted).  Plaintiff goes on, "This error is not harmless, given that [Dr.] Knox['s] opinion figured significantly into the reasoning of [the Second ME] Dr. Griffin's opinion that Plaintiff's mental impairments equal the requirements of Listing 12.06."  Id.  Defendant does not address this specific argument, but instead summarizes Dr. Knox's opinion only in the context of arguing that the ALJ appropriately found Plaintiff did not meet or equal a Listing.  See Def.'s Mem. at 10.

Dr. Knox examined Plaintiff and completed a detailed report on September 22, 2014. Tr. at 612-30.  In addition to the general matters such as history, mental status findings, behavioral observations, and diagnosis, Dr. Knox's report includes results of testing and specific mental RFC limitations.  Tr. at 612-27, 628-30.

In assigning "some appropriate weight" to Dr. Knox's opinion, the ALJ stated that "Dr. Knox's mental RFC is consistent with a 'moderate' degree of limitation in most areas of function and compatible with the performance of many kinds of unskilled low stress jobs."

Tr. at 27 (citation omitted).  The ALJ also observed that Dr. Knox's opinion "is partially consistent with the opinions offered by the [non-examining, non-testifying] state agency psychologists[12] as well as the assessment offered by Dr. Adams as well as the VA treating sources."  Tr. at 27.

The ALJ's assignment of "some appropriate weight" to Dr. Knox's opinion evades meaningful judicial review.  See Akarcay v. Comm'r of Soc. Sec., No. 6:12-cv-1882-Orl-KRS, 2014 WL 12618196, at *3 (M.D. Fla. Mar. 20, 2014) (unpublished) (reversing and remanding for proper consideration of a treating physician's opinion when the ALJ assigned it "some appropriate weight" and observing that "[w]hile it is not clear what 'some appropriate weight' means, it is clear that the ALJ gave greater weight to the opinion of [an ME who testified at a hearing]").  Further, the ALJ's observations about Dr. Knox's supposed assignment of "moderate" limitations in "most areas," Tr. at 27, ignores that Dr. Knox assigned marked limitations in three areas: understanding and remembering complex instructions; carrying out complex instructions; and the ability to make judgments on complex work-related decisions, Tr. at 628.  For these reasons, remand is required for further consideration of Dr. Knox's opinion.

---

[12]     The ALJ's reference to the "state agency psychologists," Tr. at 27, is a reference to non-examining psychologists who, earlier in the administrative proceedings, reviewed the evidence available at the time and issued opinions regarding Plaintiff's mental impairments and their effects on her ability to perform work.  These psychologists' opinions are not directly at issue in this appeal.  The ALJ's summary of these psychologists' opinions appears on pages 25-26 of the administrative transcript (pages 7-8 of the Decision).  The opinions themselves are located on pages 94-96 and 108-10 of the administrative transcript.

**E.  Dr. Griffin (Second ME)**

Plaintiff contends the ALJ erred in rejecting the opinion of Dr. Griffin, the Second ME. Pl.'s Mem. at 15-17.  Defendant responds that the ALJ's reasons for rejecting the opinion are supported by substantial evidence.  Def.'s Mem. at 6-11.

Dr. Griffin testified during the second hearing that Plaintiff has "three conditions that are primarily afflicting" her: "alcohol dependence"; "major depressive disorder, which has been chronic"; and "generalized anxiety disorder" which later was recognized by Plaintiff's treating doctors as PTSD.  Tr. at 860-61.  Dr. Griffin testified that consultative examiner Dr. Knox's diagnoses are also "consistent with the record as a whole."  Tr. at 862.  According to Dr. Griffin, Plaintiff's conditions "equal in severity, listing 12.06," which addresses anxiety-related disorders.  Tr. at 863; see 20 C.F.R. Part 404, Subpart P, Appendix 1.  Also, Dr. Griffin opined that Plaintiff's "alcohol use and occasional marijuana use would not be a material factor" in Plaintiff's disability determination.  Tr. at 863.

The ALJ in the written Decision "reject[ed]" Dr. Griffin's opinion, reasoning as follows:

> Plaintiff successfully worked for years after the allegedly traumatic events [causing the PTSD], waited years before seeking any treatment and has not received much in the way of such PTSD related treatment from the VA.  Rather, the VA records note that [Plaintiff] has dysthymia.  Medical records received subsequent to the initial hearing also support that no listing is met or equaled. Additionally, the two other testifying psychological experts, along with the two State agency mental health reviewing sources,[13] did not find that [Plaintiff's] impairment(s) met or medically equaled any listing.

Tr. at 23 (citations omitted).  While most of the reasons provided by the ALJ are accurate and supported by substantial evidence, two are not.  First, contrary to the ALJ's suggestion, Dr. Tocci (the First ME) did not testify regarding whether Plaintiff meets or medically equals

---

[13]    See note 12, supra.

-17-

a listing.  See supra at Part IV.B.  Second, although the VA records are not a model of clarity, they do more than just "note that [Plaintiff] has dysthymia."  Tr. at 23.  These records contain other diagnoses, including PTSD.  See, e.g., Tr. at 685-93.  The PTSD diagnosis is consistent with all of the other opinion evidence of record and with the ALJ's finding that Plaintiff's "history of PTSD" is a severe impairment.  Tr. at 21.  For these reasons, the ALJ on remand must reconsider Dr. Griffin's opinion.

## F.  Dr. Adams (Third ME)

Plaintiff asserts the ALJ erred in assigning "greater weight" to the opinion of the third ME, Dr. Adams.  Pl.'s Mem. at 22-25.  According to Plaintiff, the ALJ cannot accept Dr. Adams's opinion, while at the same time reject the First ME's and the Second ME's opinion based upon the same criteria.  Id.  Defendant responds that Dr. Adams's opinion is "supported by and consistent with the record as a whole."  Def.'s Mem. at 8 (citations omitted).

Dr. Adams testified at the third hearing.  Among other things, Dr. Adams opined that while Plaintiff suffers from PTSD, Plaintiff does not meet or medically equal any listing.  Tr. at 42, 47.  Dr. Adams further opined that Plaintiff has "[m]ild limitations for activities of daily living; moderate limitations in the social area; moderate limitations of concentration, persistence, and pace; and no documented episodes of decompensation of extended duration."  Tr. at 48.  Dr. Adams also testified about the specific work-related functions Plaintiff can and cannot perform, Tr. at 48-49, which the ALJ adopted in the Decision and RFC, Tr. at 22-24.

In assigning "[g]reater weight" to Dr. Adams's opinion, the ALJ provided two reasons. First, "Dr. Adams is a clinical psychologist designated by the Commissioner as a medical expert." Tr. at 24.  Second, "Dr. Adams reviewed all of the updated medical evidence and provided unbiased testimony along with a cogent rationale and medical support for his opinion." Tr. at 24.  As to the first reason, Plaintiff is correct that this could apply with equal force to the First ME and Second ME.  And while ordinarily the second reason may suffice to assign an opinion greater weight, it appears that the ALJ misstated that Dr. Adams reviewed all updated medical evidence.  See Tr. at 44-45 (Dr. Adams testifying there is no VA evidence after 2013, and Plaintiff's counsel explaining it was submitted the day of the hearing), 45-46 (ALJ confirming that the evidence was not in the file for Dr. Adams's review).  The undersigned appreciates the ALJ's frustration with having to continue the hearing twice, in part to receive the updated VA medical records, and not receiving the updated medical records in sufficient time for Dr. Adams to review them (due to no fault of the ALJ).  However, the misstatement in the ALJ's written Decision about what Dr. Adams was able to review, combined with the other errors in addressing the medical opinions, must be corrected.

## G.  VA Disability Rating

Plaintiff argues the ALJ erred in assigning "[l]ittle weight" to the VA disability rating. Pl.'s Mem. at 20-22; see Tr. at 27.  The ALJ did so because the Social Security Administration "uses a different disability standard and is not bound by the decision of another government agency." Tr. at 27.  Defendant contends that "[g]iven the fact that VA determinations are not binding on the Commissioner, any oversight by the ALJ regarding

the VA evaluation was at most harmless, as Plaintiff failed to show [s]he was prejudiced by the ALJ's consideration of the VA evaluation." Def.'s Mem. at 13 (citations omitted).

"It is not disputed that the VA's 'disability' determination relies on a different criteria than the [Social Security Administration's] determination.  But that does not mean that the ALJ can summarily ignore the VA's determination . . . ." Brown-Gaudet-Evans v. Comm'r of Soc. Sec., ___ F. App'x ___, 2016 WL 7157976, at *1 (11th Cir. Dec. 8, 2016) (unpublished).  Thus, on remand, the ALJ must assign the appropriate weight to the VA disability rating.  Although the ALJ on remand "is not required to give the VA's disability determination controlling weight . . . the ALJ must seriously consider and closely scrutinize the VA's disability determination and must give specific reasons if the ALJ discounts that determination." Id. (citation omitted).

## V.  Conclusion

After due consideration, it is

**ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

> (A)      Reevaluate the opinions of Dr. Tocci, Dr. Knox, Dr. Griffin, and Dr. Adams, stating with particularity the weight assigned and the reasons for that weight;

(B)  Reevaluate the VA's disability rating, ensuring that it is closely scrutinized and, if discounted, provide specific reasons for doing so; and

(C)  Take such other action as may be necessary to resolve this matter properly.

2.  The Clerk is further directed to close the file.

3.  In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on March 31, 2017.

James R. Klindt

**JAMES R. KLINDT**
United States Magistrate Judge

kaw
Copies to:
Counsel of record

-21-